UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 25-977-KK-SPx** | Date: | October 27, 2025 |
| Title: | ***Travis Poper v. Fox News Network, LLC*** | | |

Present: The Honorable    KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Twyla Freeman | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (In Chambers) Order Granting Defendant's Motion to Compel Arbitration [Dkt. 20]; Denying as Moot Defendant's Motion to Dismiss [Dkt. 21]**

## I.
## INTRODUCTION

On April 21, 2025, plaintiff Travis Poper ("Plaintiff") filed the operative Class Action Complaint ("Complaint") against defendant Fox News Network, LLC ("Defendant"), asserting violations of California's automatic renewal and unfair competition laws arising from Plaintiff's subscription to FoxNation.com.  ECF Docket No. ("Dkt.") 1, Complaint ("Compl.").  On August 13, 2025, Defendant filed the instant Motion to Compel Arbitration.  Dkt. 20, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); L.R. 7-15.  For the reasons set forth below, Defendant's Motion is **GRANTED**.

## II.
## BACKGROUND

### A.    PROCEDURAL HISTORY

On April 21, 2025, Plaintiff filed the operative Complaint against Defendant, raising two causes of action: 1) violation of the California Automatic Renewal Law ("CARL") under California Business & Professions Code Sections 17600, 17535, and 17200, and (2) violation of the California Unfair Competition Law ("UCL") under California Business & Professions Code Section 17200 et seq.  Compl. ¶¶ 34-45.

Plaintiff seeks to bring the instant action on behalf of:

> All individuals in California who were (1) enrolled in a FoxNation.com membership program on or after April 21, 2021, and (2) charged for such FoxNation.com membership program within the applicable statute of limitations.

Id. ¶ 26. Plaintiff seeks restitution, "an injunction on behalf of the People of the State of California," attorneys' fees, costs, and interest. Id. at 15.

On August 13, 2025, Defendant filed the instant Motion, arguing Plaintiff's claims are subject to arbitration because Plaintiff entered into a valid and enforceable arbitration agreement, which encompasses Plaintiff's claims. Mot. Defendant, therefore, requests the case be compelled to arbitration or, in the alternative, be transferred to the Southern District of New York pursuant to the forum-selection clause. Id. at 25-26. In support of the Motion, Defendant filed the Declarations of Matthew X. Etchemendy, dkt. 20-2, Adriana Garcia, dkt. 20-3 ("Garcia Decl."), Daryl Bowden, dkt. 20-8, and Stephen Williams, dkt. 20-9. Defendant also filed various exhibits. Dkt. 20-4 to -7.

On the same day, Defendant filed a Request for Judicial Notice.[1] Dkt. 22.

On September 10, 2025, Plaintiff filed an Opposition arguing the arbitration agreement in the Terms is unenforceable because it "waives Plaintiff's right to pursue public injunctive relief" and "is procedurally and substantively unconscionable." Dkt. 26, Opposition ("Opp.").

On October 1, 2025, Defendant filed a Reply. Dkt. 28, Reply.

This matter, thus, stands submitted.

///

///

---

[1] A court may take judicial notice of documents extrinsic to the complaint if no party contests their authenticity and the complaint "necessarily relies" upon the documents, Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998), superseded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676 (9th Cir. 2006), or if the documents are matters of public record, Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Defendant requests the Court take judicial notice of the Fox Nation Terms of Use, dkt. 22, Declaration of Christopher W. James ("James Decl."), ¶ 3, Ex. A ("Ex. A"), and documents regarding the regulations of Fox News and Fox Television Stations, LLC by the Federal Communications Commission ("FCC") and the corporate relationship between Fox News and Fox Television, James Decl., ¶¶ 4-15, Exs. B-M. With respect to the Fox News Nation Terms of Use, Ex. A, because Plaintiff does not dispute the authenticity of the document and the document is necessarily relied upon by the Complaint, Defendant's Request for Judicial Notice as to the Terms is **GRANTED**. With respect to the remaining documents, because the Court does not rely on any of these documents in reaching its conclusion, Defendant's Request for Judicial Notice as to the FCC regulation and the corporate relationship among interested parties, James Decl., ¶¶ 4-15, Exs. B-M, is **DENIED**.

**B.     RELEVANT FACTS**

    **1.     Auto-renewal Subscription**

As alleged in the Complaint, Plaintiff is a citizen of California.  Compl. ¶ 8.  Defendant is a Delaware limited company with its principal place of business in New York that owns and operates FoxNation.com.  Id. ¶ 9.  In 2020, Plaintiff signed up for a "free-trial" subscription that gave him access to FoxNation.com's online content, including documentaries, news, concerts, interviews, and other videos.  Id. ¶¶ 10, 18.  Plaintiff proceeded with the sign-up process with the belief "that upon expiration of the free trial period, his credit card would be charged for a single year in the amount of $46.17."  Id. ¶ 19.  On December 21, 2020, "Plaintiff's credit card was charged $46.17."  Id. ¶ 20.

Plaintiff alleges "Defendant [did] not provide consumers with automatic renewal disclosures in the manner required by California law," and Plaintiff "was not aware that Defendant was going to enroll him in a subscription that would automatically renew from one year to the next and for which additional charges would be posted to Plaintiff's credit card."  Id. ¶¶ 17, 21.  Despite this, "[on] December 21, 2021, December 21, 2022, and December 21, 2023, [Defendant] posted additional charges of $71.03" to his credit card.  Id. ¶ 21.  "Plaintiff did not wish to renew at all, and if he did renew, Plaintiff did not wish to spend more than the promotional rate he spent in the first year of $46.17."  Id. ¶ 22.  Further, Plaintiff alleges if he "had known that Defendant was going to enroll him in an automatically renewing program that would result in additional charges being posted to his credit card, Plaintiff either would not have submitted his credit card account to Defendant or would have cancel[]ed so as to avoid any charges to his credit card during or after December 2020."  Id. ¶ 23.

Plaintiff, therefore, canceled his account upon discovering the renewal charges.  Id. ¶ 24.  On December 5, 2024, Plaintiff signed up for FoxNation.com's subscription service again.  Id. ¶ 25.  "Plaintiff would like to use FoxNews.com if it would let Plaintiff pick when he wants to sign up for a year's service instead of auto renewing his credit card account without the required disclosures."  Id.

    **2.     The Terms of Use**

As alleged and, thus, conceded by Plaintiff, in order for Plaintiff to complete the sign-up process, Plaintiff had to create an account on FoxNation.com.  Id. ¶¶ 14-15.  While creating an account on FoxNation.com, the consumer would have to enter his name, email address, and desired password.  Garcia Decl., ¶ 26.  "The 'Create Account' webpage also included a red 'Continue' button, and consumers could not continue through the buy-flow without pressing that button.  The 'Create Account' page also included the following notice below the password box and above the red 'Continue' button: 'By clicking "Continue,"' you agree to the Terms of Use, Privacy Policy, and agree to receive content and promotional communications.'  The words 'Terms of Use' and 'Privacy Policy' were blue hyperlinks that took the consumer to separate webpages where those agreements were provided."  Id.; see also id. ¶ 27, Ex. D.

The first paragraph of the Terms of Use ("Terms") states: "Please note that the 'Arbitration Agreement' in Section 13 below contains provisions that require, with limited exceptions . . . all disputes arising between you and Fox under this agreement to be resolved in binding arbitration,

and not in court . . . . By using Fox Nation services, you unconditionally agree to be bound by these Terms of Use, including the arbitration agreement." Ex. A, at 10. Further, Section 13(1) of the Terms states the customer "agree[s] that any Dispute . . . between [the customer] and Fox, regarding any aspect of [the customer's] relationship with Fox, will be resolved in a binding, confidential, individual and fair arbitration process, and not in court. Each of [the customer] and Fox agree[] to give up the right to sue in court." Id. at 24. Section 13(2) of the Terms specifies:

> The term 'Dispute' . . . shall include any dispute, claim, demand, count, cause of action, or controversy between you and Fox . . . . The term 'Dispute' specifically includes, but is not limited to, any disputes, actions, claims, or controversies between you and the Fox that arise from or in any way relate to or concern any Content, products or services provided by Fox including but not limited to the Fox Services (as defined above), this Arbitration Agreement, any other aspect of these Terms of Use (including their applicability and their conformance to applicable law) . . . . The only exceptions to this Arbitration Agreement are that (i) each of you and Fox retains the right to sue in small claims court and (ii) each of you and Fox may bring suit in court against the other to enjoin infringement or other misuse of intellectual property rights. Disputes over whether these exceptions apply shall be resolved by the court in which such action has been brought; all other disputes over arbitrability shall be resolved by the arbitrator.

Id.

The Terms also states "you . . . also agree[] to give up the ability to seek to represent[] in a class action[.]" Additionally, Section 15 of the Terms provides a choice of law clause and a forum-selection clause, stating "[t]his Agreement will be governed by, and construed in accordance with, the laws of the State of New York, without regard to its conflict of law provisions. Except with respect to Disputes to be resolved through an arbitration process in accordance with the Arbitration Agreement contained above, you and Fox agree to submit to the exclusive jurisdiction of the courts located in New York, New York to resolve any Dispute arising out of this Agreement or the Fox Nation Services." Id. at 27.

## III.
## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "The FAA limits federal court review of arbitration agreements to two gateway arbitrability issues: (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." Bielski v. Coinbase, Inc., 87 F.4th 1003, 1009 (9th Cir. 2023) (internal quotation marks omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

In ruling upon a motion to compel arbitration, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 670 (9th Cir. 2021). The party seeking to compel arbitration "bears the

burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1283 (9th Cir. 2017) (internal quotation marks omitted). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into [an arbitration agreement]." Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980)).

## IV.
## DISCUSSION

As an initial matter, Plaintiff does not oppose that a valid agreement to arbitrate exists. See Opp. Plaintiff's failure to contest the merits of Defendant's argument that the parties had entered into a valid agreement "constitutes abandonment of the claim." See Moore v. Apple, Inc., 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014); accord Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos, 495 F. Supp. 3d 848, 854 (C.D. Cal. 2020) ("Arguments to which no response is supplied are deemed conceded."). Hence, the Court concludes the parties entered into a valid agreement governed by the Terms.

Plaintiff instead argues the arbitration agreement in the Terms is unenforceable as contrary to California law because it bars Plaintiff from seeking public injunctive relief and it limits relief to an individual basis in contravention of McGill v. Citibank, N.A., 2 Cal. 5th 945 (2017). Opp. at 4-7. Further, Plaintiff argues the arbitration agreement is procedurally and substantively unconscionable because it requires disputes to be settled under New York law, which "does not have a *McGill* type rule." Id. at 7-8. However, Defendant contends, as a threshold matter, the issue of whether California law renders the arbitration agreement unenforceable is itself a question of arbitrability reserved for the arbitration. Mot. at 22-23; Reply at 2-5. Accordingly, the Court must first determine whether the Court can decide on this question of arbitrability in the instant case.

**A.    THE ARBITRATION AGREEMENT CLEARLY AND UNMISTAKABLY DELEGATES THE THRESHOLD ARBITRABILITY ISSUE TO ARBITRATION**

   **1.    Applicable Law**

"Arbitration clauses may delegate to the arbitrator, for determination in the arbitration, certain threshold issues about the agreement. These delegation provisions are simply agreements to arbitrate threshold issues concerning the arbitration agreement." Fli-Lo Falcon, LLC v. Amazon.com, Inc., 97 F.4th 1190, 1199 (9th Cir. 2024) (citing Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68 (2010)) (citation modified). "Such arbitrable threshold issues may include whether the parties have agreed to arbitrate, or whether the arbitration agreement covers a particular controversy[.]" Id. (citation modified).

When determining whether to enforce arbitration agreements under the FAA, the gateway issue of whether the agreement encompasses the dispute "can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation modified) (emphasis in the original); accord Momot v. Mastro, 652 F.3d 982, 988 (9th Cir. 2011). Further, the Ninth Circuit has outlined the framework

for challenging the enforceability of the delegation provision and the arbitration agreement under Rent-A-Ctr., W., Inc. "First, a party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to a motion to compel arbitration. Second, a party may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable." Bielski, 87 F.4th at 1009-10.

**2.     Analysis**

Here, the Court finds the delegation provision of the arbitration agreement clearly and unmistakably delegates the issue of whether Defendant's arbitration clause is enforceable under California law to arbitration. In Plaintiff's Opposition, Plaintiff cites Nielsen Contracting, Inc. v. Applied Underwriters, Inc. for the proposition "challenges to the validity of the arbitration clause itself are generally resolved by the court in the first instance." 22 Cal. App. 5th 1096, 1108 (2018). However, Plaintiff omits the very next sentence in Nielsen Contracting, Inc., which affirms "[a]n exception to this rule applies when the parties have clearly and unmistakably agreed to delegate questions regarding the validity of the arbitration clause to the arbitrator." Id. (citing Rent-A-Ctr., W., Inc., 561 U.S. at 68-69).

Here, the parties entered into a valid agreement governed by the Terms. Specifically, the arbitration agreement under the Terms provides:

> The only exceptions to this Arbitration Agreement are that (i) each of you and Fox retains the right to sue in small claims court and (ii) each of you and Fox may bring suit in court against the other to enjoin infringement or other misuse of intellectual property rights. Disputes over whether these exceptions apply shall be resolved by the court in which such action has been brought; *all other disputes over arbitrability shall be resolved by the arbitrator.*

Ex. A at 24 (emphasis added).

Because the arbitration agreement specifies "all other disputes over arbitrability shall be resolved by the arbitrator," the issue of whether the arbitration agreement is enforceable under California law is expressly and unmistakably delegated to the arbitrator. See Crypto Asset Fund, LLC v. OPSkins Grp. Inc., 478 F. Supp. 3d 919, 924 (C.D. Cal. 2020) (finding the arbitration clause delegated the threshold issue of arbitrability to an arbitrator where the delegation provision provides for "an arbitrator with exclusive authority to determine whether a dispute is arbitrable"); Ratajesak v. New Prime, Inc., No. SACV-18-9396-DOC-AGRx, 2019 WL 1771659, at *5 (C.D. Cal. Mar. 20, 2019) (finding the same for the delegation provision stating "ANY DISPUTES AS TO THE RIGHTS AND OBLIGATIONS OF THE PARTIES, INCLUDING THE ARBITRABILITY OF DISPUTES BETWEEN THE PARTIES, SHALL BE FULLY RESOLVED BY ARBITRATION"); cf. Capelli Enters., Inc. v. Fantastic Sams Salons Corp., No. 5:16-CV-03401-EJD, 2016 WL 4492588, at *4 (N.D. Cal. Aug. 26, 2016) (finding the arbitration clause that states "any controversy or claim arising out of or relating to this Agreement or with regard to its interpretation, formation or breach of any other aspect of the relationship between [Plaintiffs] and [Defendants] must be referred to arbitration" insufficient to meet the "clearly and unmistakably" standard (citation modified)).

Additionally, although Plaintiff argues the arbitration agreement is unconscionable, see Opp. at 7-8, Plaintiff does not assert the *delegation provision itself* is unconscionable or otherwise invalid. See Opp. Because Plaintiff raises no contract defenses directed specifically at the delegation clause, the Court must enforce it. See Bielski, 87 F.4th at 1011 ("In sum, we hold that to sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it[.]").

* * *

Thus, because the Court finds a valid agreement to arbitrate exists, and the agreement encompasses the dispute at issue, the Court must enforce the agreement. Chiron Corp., 207 F.3d at 1130. Accordingly, Defendant's Motion to Compel Arbitration is **GRANTED**.[2]

## V.
## CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel Arbitration, dkt. 20, is **GRANTED**. Accordingly, Defendant's Motion to Dismiss, dkt. 21, is **DENIED AS MOOT**.

The Court hereby **STAYS** the instant action pending resolution of the arbitration proceedings. **Upon the completion of arbitration, the parties shall file a joint status report within ten (10) days.** Failure to comply may result in sanctions, including dismissal for failure to prosecute and/or comply with Court Orders. The Court further instructs the Clerk of Court to administratively close this matter. (JS-6)

**IT IS SO ORDERED.**

---

[2] Having concluded the claims here should be arbitrated, the Court must decide whether to dismiss or stay the case. See Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir. 2014). The FAA directs district courts to stay all proceedings pending completion of arbitration, 9 U.S.C. § 3, and there is a "preference for staying an action pending arbitration rather than dismissing it." MediVas, LLC v. Marubeni Corp., 741 F.3d 4, 9 (9th Cir. 2014). Accordingly, the Court in its discretion will stay this case pending arbitration rather than dismiss it.